IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| DENNIS MENEFEE, | CASE NO. 1:19-CV-02454-JRA |
| Petitioner, | JUDGE JOHN R. ADAMS |
| vs. | MAGISTRATE JUDGE DARRELL A. CLAY |
| DAVID W. GRAY, WARDEN, BELMONT CORRECTIONAL INSTITUTION, | **REPORT AND RECOMMENDATION** |
| Respondent. | |

On October 21, 2019, Petitioner Dennis Menefee, a prisoner in state custody, filed a *pro se* Petition seeking a writ of habeas corpus under 28 U.S.C. § 2254. (ECF #1). Respondent David W. Gray, in his official capacity as Warden of the Belmont Correctional Institution (hereafter "the State"), filed a Return of Writ (ECF #9) on January 8, 2020, along with the State Court Record (ECF #9-1). Mr. Menefee filed a Traverse to Return of Writ (ECF #12) on February 14, 2020, and the State filed a Reply to Traverse (ECF #13) on February 24, 2020. On February 24, 2020, Mr. Menefee filed a Response to the State's Reply, but by Memorandum and Order dated May 15, 2020, the Reply was struck. (ECF #16).

The District Court has jurisdiction over the Petition under § 2254(a). On October 29, 2019, pursuant to Local Civil Rule 72.2, this matter was referred to then-Magistrate Judge David A. Ruiz for preparation of a Report and Recommendation. (Non-document entry dated Sept. 4, 2019). Following his elevation to District Judge, pursuant to General Order 2022-03, the referral

to Judge Ruiz was withdrawn, and this matter was randomly reassigned and automatically referred
to me. (Non-document entry dated February 15, 2022).

For the reasons discussed below, I recommend the Petition be **DISMISSED.** I further
recommend that Mr. Menefee not be granted a certificate of appealability.

BACKGROUND AND PROCEDURAL HISTORY

**State Court Indictment and Guilty Plea**

On November 4, 2016, a Stark County Grand Jury issued a multi-count indictment
charging Mr. Menefee with the following:

- One count of rape, in violation of Ohio Rev. Code § 2907.02(A)(1)(b), with
  the following specifications:
  - Sexually violent predator (Ohio Rev. Code § 2941.148),
  - Repeat violent offender (Ohio Rev. Code § 2941.149), and
  - Firearm (Ohio Rev. Code § 2941.145);

- One count of rape, in violation of Ohio Rev. Code § 2907.02(A)(1)(b), with
  the following specifications:
  - Sexually violent predator (Ohio Rev. Code § 2941.148),
  - Repeat violent offender (Ohio Rev. Code § 2941.149), and
  - Firearm (Ohio Rev. Code § 2941.145);

- One count of kidnapping, in violation of Ohio Rev. Code § 2905.01(A)(2)
  and/or (A)(3) and/or (A)(4), with the following specifications:
  - Sexual motivation (Ohio Rev. Code § 2941.147),
  - Sexually violent predator (Ohio Rev. Code § 2941.148),
  - Repeat violent offender (Ohio Rev. Code § 2941.149), and
  - Firearm (Ohio Rev. Code § 2941.145); and

- One count of having weapons while under disability, in violation of Ohio
  Rev. Code § 2923.13(A)(2).

(ECF #9-1, at PageID 119). The indictment alleged that the offense conduct took place on
September 26, 2016, and that the victim of the rape and kidnapping offenses (identified as "Jane
Doe (date of birth: October 3, 2006)") was under the age of 10 at that time. (*Id.* at PageID 119-20).

The indictment further alleged that Mr. Menefee had previously been convicted of manslaughter in Wyoming, and of robbery in Tuscarawas County, Ohio. (*Id.*). On November 10, 2016, through counsel, Mr. Menefee pled not guilty to the charges. (*Id.* at PageID 125).

On March 3, 2017, Mr. Menefee, though counsel, filed a motion seeking leave to enter a plea of not guilty by reason of insanity, which the trial court granted the same day. (*Id.* at PageID 126-27). Mr. Menefee then submitted a written plea of not guilty by reason of insanity, and requested that the trial court order "the appropriate evaluation pursuant to O.R.C. Section 2945.39." (*Id.* at PageID 128). He also filed a Motion to Determine Competency to Stand Trial. (*Id.* at PageID 129).

On March 10, 2017, the trial court entered two orders. The first referred Mr. Menefee for an evaluation of his "mental condition at the time of the commission of the offenses with which he is charged." (*Id.* at PageID 130). The report was ordered to determine "whether the defendant, at the time of the criminal act with which he is charged, did not know as a result of a severe mental disease or defect the wrongfulness of the defendant's act charged." (*Id.* at PageID 131). The second order referred Mr. Menefee for an examination "to determine whether the defendant is competent to stand trial." (*Id.* at PageID 132).

On June 2, 2017, the trial court entered a Judgment Entry further entitled "Stipulation to Report-Found Sane and Competent to Stand Trial." (*Id.* at PageID 133-34). The entry noted that Mr. Menefee had been examined by the Psycho-Diagnostic Clinic and was found "presently competent to stand trial and was not suffering from any severe mental disease or defect at the time of the offense." (*Id.*) The entry further noted that the trial court had "inquired into the premises and the State and defense counsel having stipulated to the reports dated May 3, 2017 from the

Psycho-Diagnostic Clinic and having admitted the reports into evidence, finds the defendant

understands the nature of the charge against him, and can counsel in his own defense, and is sane

and competent to stand trial." (*Id.* at PageID 133-34). The entry is signed by the trial court judge

and two prosecutors, but is not signed by defense counsel or Mr. Menefee himself. (*Id.* at PageID

134).

According to a July 31, 2017 Judgment Entry, on June 8, 2017, Mr. Menefee appeared in

court "in order to enter a plea of guilty pursuant to a negotiated plea agreement." (*Id.* at PageID

135). In pertinent part, the entry further stated:

> Upon inquiry, the defendant informed the Court that he had
> consulted with his attorney and that his attorney had fully informed
> him as to the nature of the charges, the elements constituting the
> crimes, the potential penalties upon conviction for the charges, and
> the right to a trial by jury. The defendant then indicated that he
> desired to withdraw his former plea of not guilty and to plead guilty
> pursuant to the terms and conditions of the negotiated plea
> agreement.
>
> The terms and conditions of this negotiated plea agreement, which
> were accepted by the defendant and the State of Ohio and
> recommended to the Court, included an amendment to the
> indictment in exchange for defendant's guilty plea to the charges and
> specifications set forth in the amended indictment, as well as to a
> specific sentence for those charges and specifications and defendant's
> waiver of his post-conviction remedies. Pursuant to his agreement,
> therefore, the State of Ohio moved the Court to dismiss the charged
> offense of Kidnapping and its accompanying specifications. The
> Court sustained the State's motion, and the indictment was
> accordingly amended to reflect this dismissal. The agreement also
> provided for the following sentences, which was agreed to by the
> defendant and the State of Ohio and jointly recommended to the
> Court:
>
> Count One:      Rape, R.C. 2907.02(A)(1)(b) [F1], with
> Specifications: Sexually Violent Predator Specification, R.C.
>                 2941.148) – A term of life imprisonment without
>                 Parole Eligibility, and

Repeat Violent Offender Specification, R.C. 2941.149 – a consecutive term of 10 years in prison, and

Firearm Specification, R.C. 2941.145 – a consecutive term of 3 years in prison;

Count Two: Rape, R.C. 2907.02(A)(l)(b) [F1], with
Specifications: Sexually Violent Predator Specification, R.C. 2941.148 – A term of life imprisonment without Parole Eligibility to run concurrently to the term of life imprisonment without parole eligibility ordered for Count One and its accompanying Sexually Violent Predator Specification, and

Repeat Violent Offender Specification, R.C. 2941.149 – a consecutive term of 10 years in prison, and

Firearm Specification, R.C. 2941.145 – a consecutive term of 3 years in prison;

Count Four: Having Weapons While Under Disability, R.C. 2923.13(A)(2) [F3] – a consecutive term of 36 months in prison.

In addition, the agreement provided that defendant would be designated as a Tier III Sex Offender and subject to all of the registration requirements set forth in R.C. Chapter 2950.

(*Id.* at PageID 136-37). The terms of the agreement were set forth in a written Plea of Guilty dated June 8, 2017, that was signed by the trial judge, two assistant prosecutors, Mr. Menefee, his counsel, and the court reporter. (*Id.* at PageID 144-51). The agreement noted in part: "Accordingly I will serve a total prison term of **Life Imprisonment without Parole Eligibility, plus an additional 26 years and a further additional 36 months of imprisonment**." (*Id.* at PageID 149) (emphasis in original).

5

The July 31, 2017 entry stated that the trial court gave Mr. Menefee and his counsel an opportunity "to make a statement in his own behalf or present any information in mitigation of punishment. In his statement to the Court, defendant admitted to committing the offenses and specifications to which he had pleaded guilty, and accepted his sentence as the appropriate one, and apologized to the victim and her family." (*Id.* at PageID 138). "No evidence was presented in mitigation of sentence." (*Id.*) The trial court then proceeded to pronounce sentence, as follows:

> IT IS THEREFORE ORDERED that the defendant is hereby sentenced to life imprisonment without the eligibility of parole on the charge of Rape, l Ct. [R.C. 2907.02(A)(l)(b)](Fl)(With Sexually Violent Predator Specification)[R.C. 2941.148] (With Repeat Violent Offender Specification)[R.C. 2941.149] (With Firearm Specification)[R.C. 2941.145], as contained in Count One of the Indictment
>
> IT IS FURTHER ORDERED that the defendant serve a mandatory prison term of ten (10) years in prison, on the Repeat Violent Offender Specification [R.C. 2941.149] to Rape, 1 Ct. [R.C. 2907.02(A)(l)(b)](F1), as contained in Specification Two to Count One of the Indictment, and
>
> IT IS FURTHER ORDERED that the defendant serve a mandatory prison term of three (3) years in prison, on the Firearm Specification [R.C. 2941.145] to Rape, 1 Ct. [R.C. 2907.02(A)(l)(b)](Fl), as contained in Specification Three to Count One of the Indictment, and
>
> IT IS FURTHER ORDERED that the defendant shall serve the sentence for Rape, 1 Ct. consecutive and subsequent to the mandatory incarceration for the specification that the defendant had a firearm, pursuant to 2929.14(D)(l) and consecutive and subsequent to the mandatory incarceration for the Repeat Violent Offender Specification, and
>
> IT IS FURTHER ORDERED that the defendant is hereby sentenced to life imprisonment without the eligibility of parole on the charge of Rape, 1 Ct. [R.C. 2907.02(A)(l)(b)](F1)(With Sexually Violent Predator Specification)[R.C. 2941.148] (With Repeat Violent Offender Specification)[R.C. 2941.149] (With Firearm Specification)[R.C. 2941.145], as contained in Count Two of the Indictment
>
> IT IS FURTHER ORDERED that the defendant serve a mandatory prison term of ten (10) years in prison, on the Repeat Violent Offender Specification [R.C. 2941.149] to Rape, 1 Ct. [R.C. 2907.02(A)(l)(b)](Fl), as contained in Specification Two to Count Two of the Indictment, and

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the defendant serve a mandatory prison term of three (3) years in prison, on the Firearm Specification [R.C. 2941.145] to Rape, 1 Ct. [R.C. 2907.02(A)(l)(b)|(F1), as contained in Specification Three to Count Two of the Indictment, and

IT IS FURTHER ORDERED that the defendant shall serve the sentence for Rape, 1 Ct. consecutive and subsequent to the mandatory incarceration for the specification that the defendant had a firearm, pursuant to 2929.14(D)(1) and consecutive and subsequent to the mandatory incarceration for the Repeat Violent Offender Specification, and

IT IS FURTHER ORDERED that the defendant serve a stated prison term of thirty-six (36) months on the charge of Having Weapons While Under Disability, 1 Ct.[R.C. 2923.13(A)(2)](F3), as contained in Count Four of the Indictment, and

IT IS FURTHER ORDERED that the defendant serve the prison terms for Count One, and its accompanying sexually violent predator specification, and Count Two, and its accompanying sexually violent predator specification, concurrently. However, the prison terms for the remaining specifications (Repeat Violent Offender Specifications and Firearm Specifications) that accompany Counts One and Two shall be served consecutively with each other and consecutively with the prison terms for Counts One and Two. Defendant shall serve a prison term of 36 months in prison for Count Four, to be served consecutively with all other prison terms. Therefore, defendant is ordered to serve a total prison sentence of LIFE without parole, plus an additional term of twenty-six (26) years and a [sic] then an additional term of thirty-six (36) months.

(*Id.* at PageID 139-41).

On July 26, 2017, the trial court entered a judgment entry of nolle prosequi that confirmed the June 8, 2017 dismissal of the kidnapping charge against Mr. Menefee. (*Id.* at PageID 152).

**Direct Appeal**

Under Ohio Appellate Rule 4(A)(1), to challenge his conviction or sentence, Mr. Menefee was required to file a Notice of Appeal within 30 days from the trial court's entry of its July 31, 2017 Judgment Entry, *i.e.*, by August 30, 2017. Mr. Menefee did not do so; hence, there was no timely direct appeal.

However, more than a year later, on September 20, 2018, Mr. Menefee (acting *pro se*) filed a Notice of Appeal and a Motion for Leave to File Delayed Appeal with the Ohio Fifth District Court of Appeals. (*Id.* at PageID 153-59). With respect to the reasons why he did not file a timely appeal, Mr. Menefee wrote as follows:

**Why Defendant-Appellant Did Not File a Timely Appeal**

> 1) Defendant-Appellant was denied effective representation of legal counsel in violation of the 14th Amendment of the U.S. Constitution and Section 16, Article 1 of the Ohio Constitution which substantial prejudiced the ability of Defendant to appeal timely, or at all.
> 2) As a result of the ineffective assistance of counsel Defendant's plea was not voluntary, Defendant did not understand the effects of the guilty plea at the time it was entered, nor was it understood that I was waiving constitutional rights.
> 3) I lack the ability, knowledge and skill to comprehend the appeal process.
> 4) I am without funds to retain legal counsel and acquire the supporting evidence which exists, and was not obtain by my court appointed trial counsel, that would have, if obtained (DNA, Video, witness statements) exonerated me.
>
> Defendant-Appellant also attaches an affidavit in support.

(*Id.* at PageID 158). Although the motion averred that it was supported by an affidavit, none appears in the State Court Record.

On November 6, 2017, the Fifth District denied Mr. Menefee's request for a delayed appeal. (*Id.* at PageID 160). The Fifth District stated: "While Appellant noted several potential errors to be raised, he offered no explanation in his motion as to why he waited over a year to seek an appeal. Further, Appellant has failed to provide this Court with a copy of the order he seeks to appeal." (*Id.*)

Mr. Menefee did not attempt to appeal the Fifth District's decision to the Ohio Supreme Court. (*Id.* at PageID 163).

**Petition to Vacate or Set Aside Judgment of Conviction or Sentence**

On August 23, 2018, Mr. Menefee (also acting *pro se*) filed a Petition to Vacate or Set Aside Judgment of Conviction or Sentence with the trial court. (*Id.* at PageID 162-65). He raised a single

claim: "Petitioner asserts violations of the 14th Amendment of the United States Constitution; and, Section 16, Article I of the Ohio Constitution." (*Id.* at PageID 163). The petition further explained as follows:

> Petitioner was denied effective assistance of legal counsel. I was cajoled into entering a plea that was not voluntary. I did not understand, nor was I properly informed regarding the effects of a guilty plea at the time it was entered, nor did I comprehend the waiver of my constitutional rights. I lack the ability, knowledge and skill necessary to understand the legal ramifications of my plea.

(*Id.*). Concurrently, Mr. Menefee also filed a Motion for Expert Assistance (*id.* at PageID 167-69) and a Motion for Appointment of Counsel (*id.* at PageID 170-72). He subsequently filed a letter containing supplemental authority supporting his requests. (*Id.* at PageID 173-74). On April 22, 2019, the State filed its brief opposing the petition for post-conviction relief. (*Id.* at PageID 178-86).

On June 25, 2019, the trial court denied Mr. Menefee's motion, writing in pertinent part as follows:

> This matter came before the Court on the Defendant's Petition to Vacate or Set Aside Judgment of Conviction or Sentence filed on August 23, 2018. State of Ohio filed a Response on April 22, 2019.
>
> Upon review the Court finds that Defendant's petition is a petition for post-conviction relief pursuant to R.C. 2953.21, and the Ohio Supreme Court's decision in *State v. Reynolds*, 79 Ohio St.3d 158.
>
> The Court adopts the Memorandum, contained in the State of Ohio's response to Defendant's petition. See, *State v. Lorraine*, 1996 WL 207676 (Ohio App. 11 Dist.), wherein the Eleventh District Court of Appeals adopted the decision of the First District Court of Appeals in *State v. Sowell* (1991), 73 Ohio App.3d 672. In *Sowell*, the First District Court of Appeals determined that the trial court's adoption of the state's findings of fact and conclusions of law does not, by itself, deprive the petitioner of a meaningful review of his petition for post-conviction relief. See also, *State v. Powell* (1993), 90 Ohio App.3d 260, 263, *State v. Murphy* (May 12, 1995), Marion App. NO. 9-94-52, unreported, and *State v. Jester*, 2004 WL 1532205 (Ohio App. 8 Dist.)

9

Accordingly, the Court dismisses the untimely petition for lack of jurisdiction and/or pursuant to the doctrine of res judicata. Alternatively, the Court finds that Defendant's petition fails to state any claim upon which relief can be granted.

The Court finds Defendant-Petitioner's petition for post-conviction relief not well taken and hereby denies same without a hearing.

(*Id.* at PageID 188-89).

Mr. Menefee did not appeal this decision to the Fifth District.

### FEDERAL HABEAS CORPUS

Mr. Menefee filed a *pro se* Petition with this Court on October 21, 2019. (ECF #1). In it,

Mr. Menefee raised four grounds for relief:

**Ground One**: Petitioner's guilty plea was not knowing and voluntary under the due process clause of the Fourteenth Amendment.

**Ground Two**: There were multiple errors that occurred at during the whole adjudication process, up through and including the plea hearing that were not resolved by the Court of Appeals because the Defendant-Appellant was denied effective representation of legal counsel in violation of the 14th Amendment of the U.S. Constitution, and Second Section, 16 Article 1, of the Ohio Constitution which substantially prejudicied [*sic*] the ability of defendant to effectively exercise his rights to appeal.

**Ground Three**: Petitioner was denied effective assistance of counsel at trial in violation of the Sixth Amendment. Petitioner asserts violations of the 14th Amendment of the U.S. Constitution, and Second Section, 16 Article 1, of the Ohio Constitution.

**Ground Five**: Petitioner is not guilty by reason of insanity at the time of the crime.

(ECF #1 at PageID 5-17).[1] Mr. Menefee requests that the Court "reverse and remand with instructions for the trial court to vacate its judgment and grant the writ so as to allow the Petitioner to withdraw his guilty plea, or any other remedy as this Court sees as just and

---

[1]     Mr. Menefee's Petition did not contain a Ground Four.

appropriate," as well as "any other relief to which petitioner may be entitled." (*Id.* at PageID 32). He additionally requests seven other forms of relief, including a trial of his peers, a new psychiatric evaluation, transfer to the Stark County jail pending retrial, appointment of a trial attorney, provision of experts, and appointment of a guardian *ad litem*. (*Id.* at PageID 33).

## STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 governs Mr. Menefee's Petition for writ of habeas corpus. *Lindh v. Murphy,* 521 U.S. 320, 336 (1997). The AEDPA recognizes that "[s]tate courts are adequate forums for the vindication of federal rights" and therefore acts as a "formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." *Burt v. Titlow,* 571 U.S. 12, 19 (2013). It "dictates a highly deferential standard for evaluating state-court rulings which demands that state-court decisions be given the benefit of the doubt." *Bell v. Cone*, 543 U.S. 447, 455 (2005) (internal citation and quotation omitted).

The AEDPA provides that an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim:

(1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States; or

(2)     resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d).

Habeas courts review the last explained state-court judgment on the federal claim at issue. *Ylst v. Nunnemaker*, 501 U.S. 797, 805 (1991). For purposes of § 2254(d)(1), clearly established federal law "is the governing legal principle or principles set forth by the Supreme Court at the

11

time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003). It includes "the holdings, as opposed to dicta, of [Supreme Court] decisions." *Williams v. Taylor*, 529 U.S. 362, 412 (2000).

A state court decision is contrary to Supreme Court precedent if the state court arrives at a conclusion opposite that reached by the Court on a question of law or if the state court decides a case differently than the Court has decided on a set of materially indistinguishable facts. *Williams*, 529 U.S. at 405; *White v. Mitchell*, 431 F.3d 517, 523 (6th Cir. 2005). The word "contrary" means "diametrically different, opposite in character or nature, or mutually opposed. *Williams*, 529 U.S. at 405. A state court does not act contrary to clearly established law when the precedent of the Supreme Court is ambiguous or nonexistent. *See, e.g., Mitchell v. Esparza*, 540 U.S. 12, 17 (2003) (per curiam).

A state court decision involves an unreasonable application of the Court's precedent if the state court identifies the correct governing legal rule from the Court's cases but unreasonably applies it to the facts of the state prisoner's case, or if the state court either unreasonably extends a legal principle from the Court's precedent to a new context where it should not be applied or unreasonably refuses to extend that principle in a new context where it should apply. *Williams,* at 407. The appropriate measure of whether a state court decision unreasonably applied clearly established federal law is whether that state adjudication was "objectively unreasonable" and not merely erroneous or incorrect. *Williams*, 529 U.S. at 409-11; *see also Machacek v. Hofbauer*, 213 F.3d 947, 953 (6th Cir. 2000), *cert. denied*, 531 U.S. 1089 (2001). "It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington v. Richter*, 562 U.S. 86, 102 (2011).

Under § 2254(d)(2), state court factual determinations stand unless they are objectively unreasonable in light of the evidence presented in state court. *Harrington*, 562 U.S. at 100. The Supreme Court has repeatedly emphasized "a state court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion." *Burt*, 571 U.S. at 18.

Under § 2254(e)(1), "a determination of a factual issue made by a State court shall be presumed to be correct. [Petitioner] shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2554(e)(1). Comity principles also require federal courts to defer to a state's judgment on issues of state law and state procedural law. *Murray v. Carrier*, 477 U.S. 478, 491 (1986); *Engle v. Isaac*, 456 U.S. 107, 128-129 (1982). Federal courts must accept a state court's interpretation of its statutes and its rules of practice. *Duffel v. Dutton*, 785 F.2d 131, 133 (6th Cir. 1986).

The standard is intended to be difficult to meet and reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal. *Harrington*, 562 U.S. at 102-03. To obtain "habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Id*. at 103.

### PROCEDURAL HURDLES

Before a petitioner's federal habeas claims are reviewed on the merits, the petitioner must overcome several procedural hurdles. These requirements, including exhaustion of state remedies

and procedural default, limit a petitioner's access to review on the merits of a constitutional claim. *Daniels v. United States,* 532 U.S. 374, 381 (2001).

**Exhaustion of Available State Court Remedies**

A court may not grant a petition for habeas corpus unless it appears that the petitioner has exhausted available state court remedies, there is an absence of available state corrective process, or circumstances exist that render such state process ineffective to protect the rights of the petitioner. § 2254(b)(1). Typically, the exhaustion requirement is satisfied when the petitioner fairly presents all claims to the highest court in the state in which the petitioner was convicted, giving the state a full and fair opportunity to rule on the petitioner's claims. *O'Sullivan v. Boerckel,* 526 U.S. 838, 842 (1999). A claim is fairly presented when both the factual and legal basis for the claim has been introduced to the state courts. *Fulcher v. Motley,* 444 F.3d 791, 798 (6th Cir. 2000). A failure to exhaust applies only where state remedies remain "available at the time of the federal petition." *Williams v. Anderson,* 460 F.3d 789, 806 (6th Cir. 2006). In contrast, where state court remedies are no longer available, procedural default, discussed more fully below, rather than exhaustion applies. *Id.*

**Procedural Default**

There are two avenues by which a petitioner's claim may be procedurally defaulted. *Id.* First, procedural default of a claim occurs if a petitioner "fails to comply with state procedural rules in presenting his claim to the appropriate state court." *Id.* To determine whether a petitioner's failure to comply with a state procedural rule bars review of his habeas claims, courts in the Sixth Circuit perform a four-pronged analysis: (1) whether there is a state procedural rule applicable to petitioner's claim and whether petitioner failed to comply with that rule; (2) whether

the state court enforced the procedural rule; (3) whether the procedural rule is an adequate and independent state ground on which the state can foreclose review of the federal constitutional claim; and (4) whether the petitioner can demonstrate cause for [his] failure to follow the rule and that [he] was actually prejudiced by the alleged constitutional error. *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986).

Second, a claim may be procedurally defaulted by the petitioner failing to raise it in state court and pursue that claim through the state's "ordinary appellate review procedures." *Williams,* 460 F.3d at 806 (citing *O'Sullivan,* 526 U.S. at 848 (1991)); *see also Baston v. Bagley,* 282 F. Supp. 2d 655, 661 (N.D. Ohio 2003) ("Issues not presented at each and every level [of the state courts] cannot be considered in a federal habeas corpus petition."). As addressed above, "If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, the claim is procedurally defaulted." *Id.*

A petitioner may overcome procedural default by demonstrating cause for the default and actual prejudice that resulted from the alleged violation of federal law or that there will be a fundamental miscarriage of justice if the claims are not considered. *Coleman v. Thompson,* 501 U.S. 722, 750 (1991). "The cause standard in procedural-default cases requires the petitioner to show that some objective factor external to the defense impeded counsel's efforts to raise a claim in the state courts." *Wogenstahl v. Mitchell,* 668 F.3d 307, 321 (6th Cir. 2012). There is no prejudice where the petitioner does not show a reasonable probability of a different verdict. *Mason v. Mitchell,* 320 F.3d 604, 629 (6th Cir. 2003).

Ineffective assistance of counsel may serve as cause to excuse a procedural default, but the ineffective assistance claim itself must not be procedurally defaulted. *Edwards v. Carpenter,* 529 U.S.

446, 451-52 (2000); *see also Murray*, 477 U.S. at 489 ("Ineffective assistance adequate to establish cause for procedural default of some other constitutional claim is itself an independent constitutional claim. And . . . the principles of comity and federalism that underlie our longstanding exhaustion doctrine . . . require that constitutional claim, like others, to be first raised in state court. '[A] claim of ineffective assistance,' . . . generally must 'be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default.'").

Alternatively, a petitioner may overcome procedural default by showing that a fundamental miscarriage of justice will occur if the claims are not considered. *Coleman*, 501 U.S. at 750; *Murray*, 477 U.S. at 495. A "fundamental miscarriage of justice" occurs in the "extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray*, 477 U.S. at 495-96; *Schlup v. Delo*, 513 U.S. 298, 327 (1995). A valid actual innocence claim must be supported by new evidence not presented at trial that is so strong a court cannot have confidence in the outcome of the petitioner's trial. *Id.* at 315. In other words, a "petitioner must show that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Id.* at 327.

### PRE-GUILTY PLEA CONSTITUTIONAL VIOLATIONS

As noted earlier, on June 8, 2017 (as confirmed in a July 31, 2017 Judgment Entry), Mr. Menefee entered a guilty plea to two counts of rape (with specifications) and one count of having weapons under disability. (*Id.* at PageID 137). "Generally, a voluntary and unconditional guilty plea 'bars any subsequent non-jurisdictional attack on the conviction.'" *United States v. Corp*, 668 F.3d 379, 384 (6th Cir. 2012) (internal quotations omitted). This is so because:

> [A] guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.

*Tollett v. Henderson*, 411 U.S. 258, 267 (1973). "Thus, after the entry of an unconditional plea, a defendant may only attack the court's jurisdiction and the voluntary and intelligent character of the plea itself." *Werth v. Bell*, 692 F.3d 486, 495 (6th Cir. 2012). "[G]uilty pleas 'not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences.'" *Ruelas v. Wolfenbarger*, 580 F.3d 403, 408 (6th Cir. 2009) (quoting *Brady v. United States*, 397 U.S. 742, 748 (1970). The validity of the plea must be determined from the "totality of the circumstances." *Abdus-Samad v. Bell*, 420 F.3d 614, 631 (6th Cir. 2005) (citing *Brady*, 397 U.S. at 747).

When a habeas petitioner challenges the validity of his plea, "the state generally satisfies its burden [to show that the plea was voluntary and intelligent] by producing a transcript of the state court proceeding." *Garcia v. Johnson*, 991 F.2d 324, 326 (6th Cir. 1993). "Solemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). The state court's factual finding that the plea was proper is accorded a presumption of correctness unless the transcript is inadequate to show that the plea was voluntary and intelligent. *Garcia,* 991 F.2d at 326-327; *see* U.S.C. § 2254 (e)(1). Under *Parke v. Raley*, 506 U.S. 20 (1992), and *Dunn v. Simmons*, 877 F.2d 1275 (6th Cir. 1989), the petitioner must overcome a heavy burden if a federal habeas court is to overturn a state court finding that he made a knowing and voluntary plea.

Here, the State Court Record does not contain a transcript of the change of plea hearing with Mr. Menefee. According to the State, this is because Mr. Menefee did file a timely direct

appeal and because the Fifth District denied Mr. Menefee's motion for leave to file a delayed appeal. (ECF #9 at PageID 72).

DISCUSSION

**Mr. Menefee's Petition is Untimely**

As noted above, following the trial court's entry of sentence on July 31, 2017, Mr. Menefee did not timely file a direct appeal to the Fifth District. The State contends the AEDPA limitations period began to run 30 days later on August 31, 2017 and expired one year later on August 31, 2018. (ECF #9 at PageID 77). Thus, according to the State, Mr. Menefee's Petition – filed on October 21, 2019 – was untimely because it was filed 13 months after the AEDPA limitations period expired. (*Id.*).

Under 28 U.S.C. § 2244(d), a one-year limitations period applies to applications for a writ of habeas corpus by a person in custody pursuant to the judgment of a state court. *See also Duncan v. Walker*, 533 U.S. 167, 179 (2001) (noting that one-year limitation period in § 2244(d)(1) meets the interest in the finality of state court judgments). The statute of limitations is not jurisdictional; rather, it is an affirmative defense that a party must raise in the first responsive pleading. *Day v. McDonough*, 547 U.S. 198, 205 (2006); *see also Scott v. Collins*, 286 F.3d 923, 927-28 (6th Cir. 2002). Though not jurisdictional, when the State raises a timeliness question and the petition is late, the district court should dismiss the case. *Akrawi v. Booker*, 572 F.3d 252, 260 (6th Cir. 2009); *see also McCray v. Vasbinder*, 499 F.3d 568, 577 (6th Cir. 2007) (reversing order granting habeas relief because the "gateway requirements" for excusing a time-barred petition—*i.e.*, equitable tolling and actual innocence—had not been satisfied).

The AEDPA's statute of limitations period runs from the latest of four dates:

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1). Here, pursuant to § 2254(d)(1)(A), I conclude the State is correct that the one-year limitations period began to run as of August 31, 2017, when Mr. Menefee's state-court conviction became final following the lack of appeal to the Fifth District. As such, unless the time period was tolled or Mr. Menefee meets the "actual innocence" exception, his Petition should be dismissed.

*Statutory tolling is inapplicable*

The AEDPA limitations period is tolled while a state prisoner seeks postconviction relief in state court. Under § 2244(d)(2), the time during which a properly filed application for state post-conviction or other collateral review with respect to the pertinent judgment or claim is pending does not count toward any period of limitation. The Supreme Court has determined an application is "'properly filed' when its delivery and acceptance are in compliance with the applicable laws and rules governing filings. These usually prescribe, for example, the form of the document, the time limits upon its delivery, the court and office in which it must be lodged, and the requisite filing fee." *Artuz v. Bennett,* 531 U.S. 4, 8 (2000).

Here, Mr. Menefee filed a Petition to Vacate or Set Aside Judgment of Conviction or Sentence with the trial court on August 23, 2018. (ECF #9-1 at PageID 162-65). This was before

19

the AEDPA one-year limitations period expired on August 31, 2018, and thus could conceivably be sufficient to trigger statutory tolling.

But, as noted earlier, the trial court ultimately rejected Mr. Menefee's post-conviction petition on the grounds that it was untimely. (*Id.* at PageID 188-89). And in *Pace v. DiGuglielmo*, 544 U.S. 408 (2005), the Supreme Court confirmed that a state post-conviction petition that is rejected by the state courts on timeliness grounds does not meet the standard of "properly filed" and therefore does not entitle the habeas petitioner to the benefit of statutory tolling under § 2244(d)(2).

For these reasons, I conclude that statutory tolling does not save Mr. Menefee's Petition.[2]

*Equitable tolling also does not apply*

In appropriate cases, § 2244(d) petitions are subject to equitable tolling. *Holland v. Florida*, 560 U.S. 631, 645 (2010). Equitable tolling allows courts to review time-barred habeas petitions "provided that 'a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond that litigant's control.'" *Robinson v. Easterling*, 424 Fed. App'x 439, 442 (6th Cir. 2011) (quoting *Robertson v. Simpson*, 624 F.3d 781, 783 (6th Cir. 2010)). The statute of limitations will only be tolled if the circumstances were both beyond the control of the litigant and unavoidable with reasonable diligence. *Id.* The party seeking equitable tolling of the statute of limitations bears the burden of proving he is entitled to it. *Robertson*, 624 F.3d at 784. To demonstrate entitlement to equitable tolling, a petitioner must establish: (1) that he has diligently pursued his rights; and (2) "that some extraordinary circumstance stood in his way and prevented

---

[2]      Mr. Menefee's motion seeking leave to file a delayed appeal cannot toll the AEDPA one-year deadline because that filing was made on September 20, 2018, which was *after* the limitations period had already expired.

timely filing." *Holland*, 560 U.S. at 648 (internal quotation omitted). Equitable tolling is granted sparingly and is evaluated on a case-by-case basis, with the petitioner retaining the "ultimate burden of persuading the court that he or she is entitled to equitable tolling." *Ata v. Scutt*, 662 F.3d 736, 741 (6th Cir. 2011).

Mr. Menefee seeks to invoke equitable tolling on several grounds. Among these are because he is proceeding *pro se*, he is "not a well seasoned legal professional who is accustomed to perfecting briefs and motions," he has limited access to legal resources at the facility where he is imprisoned, and the facilities procedures for printing and mailing a habeas petition are burdensome. (ECF #1 at PageID 22-23). But it is well established that these bases are insufficient to trigger equitable tolling. *See, e.g.*, *Washington v. Elo*, No. 99-cv-71187-DT, 2000 WL 356353, at *6 (E.D. Mich. Feb. 29, 2000) (holding that "neither excusable neglect nor ignorance of the law alone are sufficient to invoke equitable tolling") (quotation omitted); *Wilson v. Birkett*, 192 F. Supp. 2d 763, 766 (E.D. Mich. 2002) ("[C]laims that a petitioner did not have professional legal assistance are also not an extraordinary circumstance which would toll the statute of limitations."); *Sperling v. White*, 30 F. Supp. 2d 1246, 1254 (C.D. Cal. 1998) (ignorance of the law, illiteracy and lack of legal assistance do not constitute extraordinary circumstances). As the Sixth Circuit stated in *Jourdan v. Jabe*, 951 F.2d 108, 109 (6th Cir. 1991): "while pro se litigants may be entitled to some latitude when dealing with sophisticated legal issues . . . there is no cause for extending this margin to straightforward procedural requirements that a layperson can comprehend as easily as a lawyer.").

Additionally, Mr. Menefee claims he is entitled to equitable tolling because the trial court "did not inform the defendant (even had he been competent) that he had appellate rights . . . ."

(ECF #9-1 at PageID 22). But the record belies this assertion. Specifically, the June 8, 2017 Plea of Guilty that Mr. Menefee signed acknowledges that he was "advised by counsel of [his] right to appeal the convictions or sentences in this case, including the appeal right conferred by R.C. 2953.08, and to challenge the conviction or sentence collaterally through a post-conviction relief proceeding under R.C. 2953.08, as well as other post-conviction proceedings and that [he] knowingly, intelligently and voluntarily waive[s] those rights to contest or collaterally attack this conviction and the resulting sentences pursuant to R.C. 2953.21 for any reason, except for the limited purpose of challenging the competency or effectiveness of my counsel." (*Id.* at 149). The written guilty plea also notes that "[m]y counsel and the Court have advised me that by entering a Plea of **Guilty** I am waiving (giving up) the following Constitutional Rights: . . . . My right to appeal or collaterally challenge my convictions or sentences." (*Id.* at 150) (emphasis in original). The written plea also states: "I hereby acknowledge that I understand all of the above, and that all of the above terms have been explained to me." (*Id.*) In light of the foregoing, I find no merit to Mr. Menefee's attempt to invoke equitable tolling on the grounds that he was not fully advised of his appellate rights that were being waived as part of his agreement with the State to obtain dismissal of the kidnapping claim. Moreover, even if trial counsel or the trial court did not notify Mr. Menefee of his appellate rights, the Sixth Circuit has held that neither the state court's failure, nor trial counsel's failure to advise the petitioner of his appellate rights alone justifies equitable tolling. *See Miller v. Cason,* 49 Fed. App'x 495, 497 (6th Cir. 2002); *see also Jurado v. Burt,* 337 F.3d 638, 644-45 (6th Cir. 2003).

Next, Mr. Menefee asserts that equitable tolling should apply because he "has suffered from and continues to suffer from severe mental illness that precluded him from timely filing his

22

direct appeal within the thirty days specified under Ohio statutes." (ECF #9-1 at PageID 22). "Mental incapacity of the petitioner can warrant the equitable tolling of the statute of limitations" in an AEDPA case. *McSwain v. Davis*, 287 F. App'x 450, 456 (6th Cir. 2008). But "mental incompetence is not a per se reason to toll a statute of limitations." *Id.* (citing *Nara v. Frank*, 264 F.3d 310, 320 (3rd Cir. 2001)). "In order to be entitled to equitable tolling the petitioner must make a threshold showing of incompetence and must also demonstrate that the alleged incompetence affected her ability to file a timely habeas petition." *Id.* (citing *Laws v. Lamarque*, 351 F.3d 919, 923 (9th Cir. 2003)); *see also Robertson*, 624 F.3d at, 785 ("Several courts of appeal have held that for the mental incapacity of a petitioner to warrant equitable tolling of a habeas statute of limitations, the petitioner must demonstrate that the incompetence affected his or her ability to file a timely habeas petition.").

Mr. Menefee provides no medical records showing any mental illness. He did not provide any other evidence related to his mental health. And he "has not introduced any evidence related to how his alleged mental illness affected his ability to file a habeas petition within the one-year statute of limitation." *Patton v. Meko*, No. 09-02-ART, 2009 WL 1804119, at *3 (E.D. Ky. June 24, 2009). To the contrary, the record evidence shows that Mr. Menefee was referred to the Psycho-Diagnostic Clinic for an examination to determine his mental condition at the time he allegedly committed the underlying offenses (ECF #9-1, at PageID 130), underwent that examination, and was found "not suffering from any severe mental disease or defect at the time of the offense." (*Id.* at PageID 133). Further, Mr. Menefee's trial counsel "stipulated to the reports" from the Psycho-Diagnostic Clinic. (*Id.*) In light of the lack of evidence substantiating Mr. Menefee's claims before this Court, "he cannot avail himself of equitable tolling on this ground." *Id.*

23

Finally, Mr. Menefee asserts that equitable tolling is appropriate because "the state has not been prejudiced by any lengths of delay." (ECF #1 at PageID 27). Even if true, a lack of prejudice occasioned by delay "is not a sufficient condition for equitable tolling." *Goble v. Taylor*, No. 14-58-ART-REW, 2015 WL 770389, at *5 (E.D. Ky. Feb. 19, 2015).

For the foregoing reasons, I conclude equitable tolling to does save Mr. Menefee's untimely Petition.

### Mr. Menefee has not properly triggered the "actual innocence" exception

A claim of "actual innocence" can also toll the AEDPA limitations period. *McCray v. Vasbinder*, 499 F.3d 568, 571 (6th Cir. 2007). To invoke this exception, a petitioner must show that "in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Id.* (quoting *Schlup v. Delo*, 513 U.S. 298, 329 (1995)). The Supreme Court has described the type of evidence necessary to support a claim of actual innocence as "exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial." *Schlup*, 513 U.S. at 324. This too is a demanding standard permitting review only in an extraordinary case. *Id.*

In his Petition, Mr. Menefee asserts his habeas claims "should still be considered because he is actually innocent by reason of insanity of the charges for which he [was] convicted." (ECF #1 at PageID 31). Under Ohio law, a defendant may be found not guilty by reason of insanity "only if the person proves, in the manner specified in section 2901.05 of the Revised Code, that at the time of the commission of the offense, the person did not know, as a result of a severe mental disease or defect, the wrongfulness of the persons act." Ohio Rev. Code § 2901.01(A)(14).

Here, Mr. Menefee provides no new reliable evidence to substantiate his claim that no reasonable juror would have voted to convict him in light of any claimed mental illness or defect. Where "the record is devoid of any evidence–much less new evidence–that could support Petitioner's claim of insanity," the court may find the actual innocence exception inapplicable. *See Cole v. Tribley*, No. 12-14826, 2015 WL 471388, at *5 (E.D. Mich. Feb. 4, 2015); *see also Johnson v. Diaz*, No. 2:12-cv-2565, 2014 WL 546586, at *4 (E.D. Cal. Feb. 11, 2014) (declining to invoke actual innocence exception because, other than "petitioner's vague assertions, there is nothing in the record to show that his mental state was so diminished (due to illness or intoxication) such that it is probable that no reasonable juror would have found him guilty of the charged crimes"); *cf. Mendoza v. Martel*, No. CV 14-4922, 2015 WL 9897847, at *3 (C.D. Cal. Nov. 16, 2015) (noting that "[s]tanding alone, petitioner's allegation that he is not guilty by reason of insanity does not state a cognizable claim for [habeas] relief"), *report and recommendation adopted*, 2016 WL 270369 (C.D. Cal. Jan. 21, 2016).

For the reasons discussed in this section, I conclude that Mr. Menefee's Petition is untimely, and is not saved by statutory tolling, equitable tolling, or the actual innocence doctrine. Therefore, it should be dismissed in its entirety.

**Mr. Menefee's Petition is procedurally defaulted**

Even if Mr. Menefee's Petition was timely, the claims are procedurally defaulted.

As noted above, Mr. Menefee did not timely appeal the trial court's July 31, 2017 final judgment entry to the Fifth District by August 30, 2017. Failure to timely appeal to the Court of Appeals constitutes a procedural default. *See Wagner v. Smith*, 581 F.3d 410, 418 (6th Cir. 2009)

("For a claim to be reviewable at the federal level, each claim must be fairly presented at every stage of the state appellate process."). As the Supreme Court recently had occasion to reiterate:

> A federal habeas court generally may consider a state prisoner's federal claim only if he has first presented that claim to the state court in accordance with state procedures. When the prisoner has failed to do so, and the state court would dismiss the claim on that basis, the claim is procedurally defaulted.

*Shinn v. Ramirez*, 142 S. Ct. 1718, 1727–28 (2022).

Although Mr. Menefee did seek leave to pursue an untimely appeal pursuant to Rule 5 of the Ohio Rules of Appellate Procedure, the Fifth District denied his request. And the Sixth Circuit has held that when a state court of appeals denies a request for an untimely appeal, procedural default still applies. *See Stone v. Moore*, 644 F.3d 342, 348 (6th Cir. 2011) ("Petitioner's failure to promptly file his Rule 5(A) motion constituted procedural default. This Court is therefore foreclosed from considering Petitioner's habeas claims."). So, Mr. Menefee's request for an untimely appeal does not save his Petition from procedural default.

Mr. Menefee cannot overcome procedural default because he has not established cause for the default and prejudice resulting therefrom, or that a fundamental miscarriage of justice will occur if his claims are not considered. As to cause and prejudice, he argues that his trial counsel was ineffective because counsel "failed to file a Motion to Appeal and request the appointment of Appellate Counsel at the conclusion of the Petitioner's Common Pleas Court proceedings . . . ." (ECF #12 at PageID 213). But Mr. Menefee does not provide any corroboration that he ever instructed trial counsel to file a notice of appeal or to request the appointment of appellate counsel. Furthermore, his plea agreement contains a specific acknowledgment that he knowingly, intelligently and voluntarily waive[d]" his right to appeal his convictions and sentences. (ECF #9-1 at PageID 149). And, under Ohio Revised Code § 2953.08(D), a sentence may not be reviewed on

appeal "if the sentence is authorized by law, has been recommended jointly by the defendant and the prosecution in the case, and is imposed by a sentencing judge." Mr. Menefee's plea agreement specifically noted his "understand[ing] that there will be an agreed upon sentence, jointly recommend[ed] to the Court by myself and the State of Ohio," and the actual sentence imposed was consistent with the parties' joint recommendation, thereby triggering § 2953.08(D)'s bar to reviewability. Under these factual circumstances, it could not be ineffective assistance of counsel for Mr. Menefee's trial counsel to have abstained from filing an appeal where the merits could not be considered. *See Craig v. Moore*, No. 1:07–cv–67, 2008 WL 339628, at *3–4 (S.D. Ohio Feb. 6, 2008) ("[T]he Sixth Amendment right to effective assistance of counsel on appeal only applies to those appeals which a state defendant may take as a matter of right.").

As to fundamental miscarriage of justice, Mr. Menefee asserts in his Reply that he is "actually and factually innocent." (ECF #12 at PageID 216). But Mr. Menefee provides no new evidence that was not presented at trial, and thus there is nothing in the record that would lead to a conclusion that this Court cannot have confidence in the outcome of the proceedings in the trial court.

* * *

Having found that Mr. Menefee's petition is untimely, that all grounds set forth in it are procedurally defaulted, and that he cannot meet the cause-and-prejudice or fundamental miscarriage of justice standards, further discussion as to the merits of his asserted grounds for relief is pretermitted.

CERTIFICATE OF APPEALABILITY

A habeas petitioner may not appeal the denial of an application for a writ of habeas corpus unless a judge issues a certificate of appealability (COA) and specifies the issues that can be raised on appeal. 28 U.S.C. § 2253(c). "A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Where a district court has determined a petitioner's constitutional claim to be without merit, the petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong" before receiving a COA. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). When the district court denies a habeas petition on procedural grounds without reaching the petitioner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *Id.* A showing that the appeal would succeed on the claim is not required to granting of a certificate of appealability. *Miller-El v. Cockrell*, 537 U.S. 322, 337 (2003).

I find that reasonable jurists would not find it debatable whether Mr. Menefee's Petition is both untimely and procedurally defaulted. Therefore, I recommend that the District Court decline to issue a COA in this matter.

CONCLUSION

Following review, and for the reasons stated above, I recommend Mr. Menefee's Petition be **DISMISSED**. I further recommend that Mr. Menefee not be granted a certificate of appealability.

Dated: December 27, 2022

_____
DARRELL A. CLAY
UNITED STATES MAGISTRATE JUDGE

## Objections, Review, and Appeal

Within 14 days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to the proposed findings and recommendations of the Magistrate Judge. *See* Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1); Local Civ. R. 72.3(b). Properly asserted objections shall be reviewed de novo by the assigned district judge.

Failure to file objections within the specified time may result in the forfeiture or waiver of the right to raise the issue on appeal, either to the district judge or in a subsequent appeal to the United States Court of Appeals, depending on how or whether the party responds to the Report and Recommendation. *Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019). Objections must be specific and not merely indicate a general objection to the entirety of the Report and Recommendation; "a general objection has the same effect as would a failure to object." *Howard v. Sec'y of Health and Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991). Objections should focus on specific concerns and not merely restate the arguments in briefs submitted to the Magistrate Judge. "A reexamination of the exact same argument that was presented to the Magistrate Judge without specific objections 'wastes judicial resources rather than saving them and runs contrary to the purpose of the Magistrates Act.'" *Overholt v. Green*, No. 1:17-CV-00186, 2018 WL 3018175, at *2 (W.D. Ky. June 15, 2018) (quoting *Howard*, 932 F.2d at 509). The failure to assert specific objections may in rare cases be excused in the interest of justice. *See United States v. Wandahsega*, 924 F.3d 868, 878-79 (6th Cir. 2019).